UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL ROJAS,<br><br>    Plaintiff,<br><br>    v.<br><br>GENERAL MILLS, INC.,<br><br>    Defendant. | Case No. 12-cv-05099-WHO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 27 |

## INTRODUCTION

Plaintiff Gabriel Rojas brings this putative class action against defendant General Mills, Inc., asserting that its use of the term "100% Natural" on various products is deceptive and misleading because of the alleged presence of genetically modified organisms ("GMOs"). General Mills moves to dismiss the First Amended Complaint ("FAC") in its entirety because it argues that the United States Food and Drug Administration ("FDA") has primary jurisdiction over the term "natural" and that Rojas fails to plead his causes of action with particularity as required by Federal Rule of Civil Procedure 9(b). After considering the parties' briefs and argument, and for the reasons below, the Court declines to invoke the primary jurisdiction doctrine and GRANTS IN PART and DENIES IN PART General Mills's Motion to Dismiss.

## FACTUAL BACKGROUND

The Court accepts the following factual allegations in the FAC as true for purposes of the Motion to Dismiss:

Rojas has purchased General Mills products, "including but not limited to [] Nature Valley Oats and Honey Crunchy Granola Bars and Nature Valley Dark Chocolate Peanut Butter Crunchy Granola Bars, which contain corn and/or soy ingredients . . . during 2012." FAC ¶ 49. He

1    purchased them from two Safeway grocery stores in San Francisco.  FAC ¶ 49.  General Mills
2    "represented that all of its Nature Valley granola bars are 100% Natural (the "Products"),"  but
3    they are not "because they contain Genetically Modified Organisms [ ], a fact that [General Mills]
4    fails to disclose in its advertising for the Products," including the two that Rojas explicitly
5    purchased.  FAC ¶¶ 1-2.

6    GMOs "grow from seeds that have been modified in a laboratory."  FAC ¶ 28.  They "are
7    plants that grow from seeds in which DNA splicing has been used to place genes from another
8    source into a plant."  FAC ¶ 28.  "Corn and soy are known to be derived from GMOs."  FAC ¶ 3.
9    "Products containing GMOs are not 100% Natural."  FAC ¶ 4.  Nonetheless, the "100% Natural"
10   statement is "prominently displayed" on General Mills Products' packaging.  FAC ¶ 18.

11   General Mills produces the Products "in at least thirty (30) different varieties/flavors,
12   which claim to be 100% Natural when, in fact, they are not, because they contain GMOs in the
13   form of corn or soy ingredients in the Products, such as, Soy, Yellow Corn Flour, Soy Flour,
14   and/or Soy Lecithin."  FAC ¶ 17.  Rojas does not identify any of the at least 30 products aside
15   from the two explicitly mentioned.  However, he attaches images of the wrappers and containers
16   for those two products to the FAC.  FAC Exs. 1, 2.

17   "All of the Products' packaging uniformly and consistently states that the Products are
18   100% Natural," and "[a]ll Consumers who purchase the Products are exposed to the same 100%
19   Natural claim," leading them to pay a premium for them.  FAC ¶¶ 20-22.  General Mills "knows"
20   this statement is "material to the reasonable consumer," and General Mills "intends for consumers
21   to rely upon [them] when choosing to purchase the Products."  FAC ¶ 23.  These claims are also
22   "broadcast over the Internet on its website, *www.generalmills.com*."  FAC ¶ 24.  "The advertising
23   and marketing for the Products creates the uniform, untrue net-impression that the Products are
24   comprised of only 100% Natural ingredients.  Defendant then charges a premium for the Products
25   that are claimed to be 100% Natural, but that actually contain the same genetically modified
26   ingredients contained in its other products . . . which are not advertised as being 100% Natural."
27   FAC ¶ 25.

28   The FDA does not have a definition for the term "natural," but its website "loosely

1  defined" the term as a product that "does not contain added sugar, artificial flavors, or synthetic
2  substances." FAC ¶ 33. The Code of Federal Regulations defines a synthetic substance as one
3  "that is formulated or manufactured by a chemical process or by a process that chemically changes
4  a substance extracted from naturally occurring plant, animal, or mineral sources, except that [it]
5  does not apply to substances created by naturally occurring biological processes." FAC ¶ 33
6  (quoting 7 C.F.R. § 205.2). Similarly, the United States Department of Agriculture's Food Safety
7  and Inspection Service ("FSIS") defines a "natural" product as one that does not contain any
8  artificial or synthetic ingredient, and does not contain any ingredient that is more than "minimally
9  processed," i.e., one that only undergone "traditional processes used to make food edible or to
10 preserve it or to make it safe for human consumption, e.g., smoking, roasting, freezing, drying,
11 and fermenting" and has not been "fundamentally alter[ed]." FAC ¶ 35 (quoting OFFICE OF
12 POL'Y, PROG. & EMP. DEV., FOOD SAFETY & INSPEC. SERV., U.S. DEP'T OF AGRIC., FOOD
13 STANDARDS AND LABELING POLICY BOOK 116 (2005)). "Relatively severe processes, e.g., solvent
14 extraction, acid hydrolysis, and chemical bleaching would clearly be considered more than
15 minimal processing," according to the FSIS. FAC ¶ 35. The "scientific description of how GMOs
16 are produced" shows that they are not "minimally processed" or "all natural." FAC ¶ 36.

17    Rojas "relied upon" General Mills's "untrue and misleading material statements and
18 representations regarding the Products." FAC ¶ 51. "Prior to his purchase, and in purchasing the
19 Products," Rojas "saw, read, and relied on the material 100% Natural statement displayed on the
20 packaging for the Products," believing that to mean that "the Products do not contain, nor were
21 they made with, any genetically modified and/or bioengineered ingredients." FAC ¶¶ 52-53. He
22 "would not have purchased the Products had [he] known that they were not 100% Natural" or that
23 they contained GMOs. FAC ¶ 55. As a result, Rojas was "economically damaged" since "the
24 Products are worth less than what Plaintiff . . . paid for them and/or Plaintiff . . . did not receive
25 what [he] reasonably intended to receive." FAC ¶ 57. He "paid a price premium." FAC ¶ 58.

26    Rojas argues that "this case is not about labeling, it is about advertising statements that are
27 not related to the labeling of the Products." FAC ¶ 34. But General Mills "fails to disclose the
28 fact that the Products contain GMOs in its related advertising for the Products." FAC ¶ 59.

3

## PROCEDURAL HISTORY

Rojas brings this putative class action on behalf of "all residents who have purchased General Mills Nature's Valley granola bars containing corn or soy ingredients, for personal use, during the period extending from October 1, 2008, through and to the filing date of this First Amended Class Action Complaint." FAC ¶ 63. He brings the following causes of action: (1) violation of the "unlawful" prong of the Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE §§ 17200 *et seq.*; (2) violation of the "fraudulent" prong of the UCL; (3) violation of the "unfair" prong of the UCL; (4) violation of the False Advertising Law ("FAL"), CAL. BUS. & PROF. CODE §§ 17500 *et seq.*; (5) violation of the Consumer Legal Remedies Act ("CLRA"), CAL. CIV. CODE §§ 1750 *et seq.*; (6) declaratory judgment[1]; (7) and money had and received. Rojas seeks monetary and equitable relief. General Mills moves to dismiss the FAC in its entirety.

On July 29, 2013, the Court related this case with two others in this district: *Janney v. General Mills*, No. 12-cv-3919, and *Bohac v. General Mills*, No. 12-cv-5280.

## LEGAL STANDARD

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The complaint "does not need detailed factual allegations," but instead only needs enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "However, conclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss." *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 834 (9th Cir. 2012).

Additionally, fraud claims are subject to a higher standard and must be pleaded with particularity. FED. R. CIV. P. 9(b). This is true of state law claims that are grounded in fraud,

---

[1] At the motion hearing, counsel for Rojas withdrew his Sixth Cause of Action.

4

which must "be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103, 1106 (9th Cir. 2003) (quotation marks omitted). Such claims "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted). A plaintiff claiming fraud must also plead reliance. *Kwikset Corp. v. Super. Ct. of Orange Cnty.*, 51 Cal. 4th 310, 326-27 (2011) (UCL); *Princess Cruise Lines v. Super. Ct. of Los Angeles Cnty.*, 101 Cal. Rptr. 3d 323, 331 (Ct. App. 2009) (CLRA). Allegedly fraudulent must be judged against the "reasonable consumer" standard under the UCL, CLRA, or FAL. *See Consumer Advocates v. Echostar Satellite Corp.*, 8 Cal. Rptr. 3d. 22, 29 (Ct. App. 2003).

If a motion to dismiss is granted, a court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts. *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).

## DISCUSSION

### I. THE PRIMARY JURISDICTION DOCTRINE DOES NOT APPLY.

Judges in this district have repeatedly declined to invoke the primary jurisdiction doctrine in cases asking whether the term "natural" as used on food labels is false or misleading, including another case that this Court found related to this case. *See, e.g.*, *Kosta v. Del Monte Corp.*, No. 12-cv-1722-YGR, 2013 WL 2147413, (N.D. Cal. May 15, 2013); *Janney v. General Mills*, No. 12-cv-3919-PJH, 2013 WL 1962360, at *7 (N.D. Cal. May 10, 2013); *Brazil v. Dole Food Co.*, No. 12-cv-1831-LHK, 2013 WL 1209955, at *10 (N.D. Cal. March 25, 2013); *Ivie v. Kraft Foods Global, Inc.*, No. 12-cv-2554-RMW, 2013 WL 685372, at *7 (N.D. Cal. Feb. 25, 2013); *Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 898-99 (N.D. Cal. 2012) (Breyer, J.).[2] The Court finds no reason to depart from their considered judgment.

"The [primary jurisdiction] doctrine is applicable whenever the enforcement of a claim

---

[2] The Court recognizes that several of these decisions were issued after General Mills filed its Motion to Dismiss.

subject to a specific regulatory scheme requires resolution of issues that are within the special competence of an administrative body." *Farley Transp. Co. v. Santa Fe Trail Transp. Co.*, 778 F.2d 1365, 1370 (9th Cir. 1985) (quotation marks omitted). "The doctrine does not, however, require that all claims within an agency's purview be decided by the agency." *Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1086 (9th Cir. 2006) (citation and quotation marks omitted). The Ninth Circuit has applied four non-exclusive factors identified in *United States v. General Dynamics Corp.*, 828 F.2d 1356 (9th Cir. 1987), to determine whether the doctrine applies. "Under this test, the doctrine applies where there is '(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration.'" *Davel Commc'ns*, 460 F.3d at 1086 (quoting *Gen. Dynamics Corp.*, 828 F.2d at 1362).

Invocation of the doctrine is appropriate where a case "requires resolution of an issue of first impression" or when the issue is not "within the conventional experience of judges." *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002) (citing *Nat'l Commc'ns Ass'n. v. AT&T Corp.*, 46 F.3d 220, 222 (2d Cir. 1995)); *see also Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008) ("the doctrine is a 'prudential' one, under which a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed *in the first instance* by the agency with regulatory authority over the relevant industry rather than by the judicial branch") (emphasis added). At the motion-to-dismiss stage, the relevant question is "whether the complaint plausibly asserts a claim that would *not* implicate the doctrine." *Chavez v. Nestle USA, Inc.*, 511 Fed. App'x 606, 607 (9th Cir. 2013) (citation omitted). A court may decline to hear a case if it determines that the doctrine applies. *Id.* at 1088.

While issues related to food labeling are undoubtedly within the expertise of the FDA, this case does not involve a situation in which the Court should abstain from deciding the questions before it. Deciding what "natural" means is not "an issue of first impression" or one that has not been addressed "in the first instance" by the FDA. *Brown*, 277 F.3d at 1172; *Clark*, 523 F.3d at 1114. As General Mills itself concedes, "the FDA has adopted a policy for use of the word

6

'natural' on food labels, one that it enforces through administrative action," and has determined that "plants grown from bioengineered seed are no different from plants developed from traditional breeding methods." Br. 8; *see also* Br. 9 ("The FDA *does* act to enforce its policy."). It quotes the FDA as stating that "natural" means that "nothing artificial or synthetic [] has been included in, or has been added to, a food that would not normally be expected to be in the food."[3] Br. 5 (quoting FDA website). General Mills also acknowledges that the FDA "has issued repeat and consistent guidance on the proper use of the term ['natural']," and that "[w]hen this policy is violated, the FDA acts by sending warning letters to manufacturers calling for corrective action to the label." Br. 5-6. Given the amount of attention that the FDA has apparently directed towards the issue before the Court, "there is no such risk of undercutting the FDA's judgment and authority by virtue of making independent determinations on issues upon which there are no FDA rules or regulations (or even informal policy statements).'" *Brazil*, 2013 WL 1209955, at *10 (citation and quotation marks omitted).

Determining whether a term is false or misleading is within the province of the courts. "[A]llegations of deceptive labeling do not require the expertise of the FDA to be resolved in the courts, as every day courts decide whether conduct is misleading." *Jones*, 912 F. Supp. 2d at 898-99 (citations and quotation marks omitted). This case primarily requires asking whether a "reasonable consumer" would be misled by the challenged statements—what a "reasonable consumer" thinks does not involve answering technical questions or scientific expertise. *See Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1124 (N.D. Cal. 2010) ("plaintiffs advance a relatively straightforward claim: they assert that defendant has violated FDA regulations and marketed a product that could mislead a reasonable consumer. As courts faced with state-law challenges in the food labeling arena have reasoned, this is a question courts are well-equipped to handle.") (citation and quotation marks omitted). Of course, the FDA's views are "relevant to the

---

[3] General Mills cites the FDA's 1992 Statement of Policy as stating that new techniques for genetically modifying plants "are extensions at the molecular level of traditional methods" and the FDA "is not aware of any information showing that foods derived by these new methods differ from other foods in any meaningful or uniform way. . . ." Br. 6. In 2001, the FDA "concluded that the use or absence of use of bioengineering in the production of a food or ingredient does not, in and of itself, mean that there is a material difference in the food." Br. 6.

7

issue of whether these labels could be deceptive or misleading to a reasonable consumer," *Ivie*, 2013 WL 685372, at *12, but they are not the sole or dispositive factor. The questions to be decided here are squarely within "the conventional experience of judges." *Brown*, 277 F.3d at 1172.

The *General Dynamics* factors do not help General Mills. "Without question, the FDA has extensively regulated food labeling in the context of a labyrinthine regulatory scheme." *Chacanaca*, 752 F. Supp. 2d at 1124. However, answering the question of whether the food labeling in question is false or misleading does not require the FDA's expertise, and "uniformity in administration" does not weigh in favor of abstaining. *Davel Commc'ns*, 460 F.3d at 1086. Indeed, as the Court concluded in one of the cases related to this one, "the FDA has signaled a relative lack of interest in devoting its limited resources to what it evidently considers a minor issue, or in establishing some 'uniformity in administration' with regard to the use of 'natural' in food labels." *Janney*, 2013 WL 1962360, at *7; *see also Jones*, 912 F. Supp. 2d at 898 ("The FDA's inaction with respect to the term 'natural' implies that the FDA does not believe that the term 'natural' requires 'uniformity in administration.'").

General Mills relies on *Pom Wonderful, LLC v. Coca-Cola Co.*, 679 F.3d 1170 (9th Cir. 2012), and *Astiana v. Hain Celestial Group, Inc.*, 2012 WL 5873585 (N.D. Cal. Nov. 19, 2012). *Pom Wonderful*, it argues, stands for the proposition that "deference to the agency is proper even if no formal regulation has been enacted." Br. 9 n.3. In particular, General Mills quotes *Pom Wonderful*, "If the FDA believes that more should be done to prevent deception, . . . it can act. But, under our precedent, for a court to act when the FDA has not—despite regulating extensively in this area—would risk undercutting the FDA's expert judgments and authority." Br. 9 n.3 (quoting *Pom Wonderful*, 679 F.3d at 1177).

As General Mills itself says, however, "The FDA *does* act to enforce its policy." Br. 9. The issues presented here are not ones of first impression for the FDA—the Court is not wading into uncharted waters. Deciding this case does not mean that the Court shows no deference to the agency; on the contrary, the views expressed by the FDA thus far, even if informal, would likely be highly relevant to the Court's determinations. Thus, in accordance with *Pom*, the Court would

not "risk undercutting the FDA's expert judgments and authority" by hearing this case.

*Astiana*—a case about the use of the term "natural" in cosmetics—is distinguishable from the facts at hand. As one judge in this district explained, *Astiana* "is inapposite because, unlike cosmetics, the FDA has provided informal policy guidance stating the minimum standards for using the term 'natural' with respect to food products . . . ." *Kosta*, 2012 WL 5873585, at *9. Indeed, in declining to invoke the primary jurisdiction doctrine in another case related to this one, the judge in *Hain Celestial* explained that "the issuance of the informal 'policy' [on the term 'natural' with regard to food], or its citation by the FDA when it chooses to do so, suggests that the FDA does have a position of sorts—unlike the situation in *Astiana*, where the FDA had issued no guidance whatsoever, even informal policy statements, regarding the use of the term 'natural' on cosmetics packaging." *Janney*, 2013 WL 1962360, at *7. Given the FDA's guidance on food labeling to date, there is little risk of improperly invading the FDA's jurisdiction by hearing this case.

General Mills's attempts to distinguish *Brazil* and *Ivie* are unpersuasive. General Mills argues that because other terms such as "fresh, antioxidant, [and] sugar-free" were at issue in *Brazil*, in addition to "All Natural," the case is "remarkably different" from this one. Reply 5-6. General Mills bases its argument on the court's conclusion that "the FDA has established requirements applicable to all of the alleged violations . . . . Therefore, [ ] there is no such risk of 'undercutting the FDA's judgment and authority.'" Reply 6 (quoting *Brazil*, 2013 WL 1209955, at *10). However, since one of the terms in *Brazil* is "natural," for which the FDA had established requirements, *Brazil* is indeed on point—but not in favor of General Mills.

Similarly, General Mills attempts to distinguish *Ivie* because the claims there were "predicated on California state law violations that mirror or are identical to FDA provisions which require no original interpretation by this court," 2013 WL 685372, at *3, whereas here, Rojas "does not rely on any California law that mirrors FDA guidance regarding use of the term natural," Reply 6. General Mills takes the quote out of context. Properly understood, the *Ivie* court meant that the FDA had already given a "sufficiently clear" position on terms such as "natural" so that denying the motion to dismiss "would not risk undermining the agency's

9

1  expertise in this area." 2013 WL 685372, at *13. It did not hold that a plaintiff must cite parallel
2  California law to avoid the primary jurisdiction doctrine, which, in any event, would be a pleading
3  issue, not an issue of primary jurisdiction. *Ivie* squarely dealt with the term "natural" and
4  concluded that deciding "whether the challenged 'natural' labels [ ] would deceive a reasonable
5  consumer is not akin to defining FDA policy." *Id.* Far from helping General Mills, *Ivie* cuts
6  against it.

7  Finally, General Mills argues that the Court lacks subject matter jurisdiction under the
8  primary jurisdiction doctrine. Br. 6 (citing FED. R. CIV. P. 12(h)(3)). That argument is misplaced.
9  As the Ninth Circuit made clear, "[p]rimary jurisdiction is not a doctrine that implicates the
10 subject matter jurisdiction of the federal courts." *Syntek Semiconductor Co., Ltd. v. Microchip*
11 *Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002). "Rather, it is a *prudential doctrine* under which
12 courts may, under appropriate circumstances, determine that the initial decisionmaking
13 responsibility should be performed by the relevant agency rather than the courts." *Id.* (emphasis
14 added). Even were the Court to invoke the doctrine, it would not thereby "deprive the court of
15 jurisdiction." *Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1080 (9th Cir. 2006) (citation
16 and quotation marks omitted). The Court has subject matter jurisdiction over this case.

17 The Ninth Circuit has made clear that not "all claims within an agency's purview [must] be
18 decided by the agency." *Davel Commc'ns*, 460 F.3d at 1086. Just as in *Chavez*, 511 Fed. App'x
19 at 607, Rojas's "claims do not necessarily implicate primary jurisdiction, and the FDA has shown
20 virtually no interest in regulating" the term "natural." After considering the *General Dynamics*
21 factors, and because this case is neither an issue of first impression for the FDA nor a particularly
22 complicated issue inappropriate for a court to address, the Court declines to invoke the primary
23 jurisdiction doctrine.[4]

---

[4] The Court recognizes that the judge in *Cox* concluded differently. *Cox v. Gruma Corp.*, No. 12-cv-6502, 2013 WL 3828800 (N.D. Cal. July 11, 2013). However, for the reasons set out in this Order, and because the weight of authority in this district has declined to invoke the primary jurisdiction doctrine in cases similar to this one, the Court is persuaded that a stay is unwarranted. Indeed, most other federal courts that have addressed whether GMOs are "natural" have declined to stay or dismiss the case based on the primary jurisdiction doctrine. *See In re Frito-Lay N. Am., Inc. All Natural Litig.*, No. 12-md-2413, 2013 WL 4647512, at *6-7 (E.D.N.Y. Aug. 29, 2013) (stating in case concerning GMOs that "undertaking the decision-making in this case would not

## II.     FIRST THROUGH FIFTH CAUSES OF ACTION:  UCL, CLRA, FAL

All of Rojas's causes of action are subject to Rule 9(b)'s heightened pleading standard because they sound in fraud.[5]  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *cf. Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010) ("the burden of pleading [ ] in a UCL action should hinge on the nature of the alleged wrongdoing rather than the specific prong of the UCL the consumer invokes").  Fraud claims must allege "the who, what, when, where, and how of the misconduct charged," as well as "the circumstances constituting the alleged fraud." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citations and quotation marks omitted).

Although the FAC alleges that General Mills produces "at least thirty (30) different varieties/flavors, which claim to be 100% Natural, when in fact, they are not," FAC ¶ 17, the FAC does not plead "at least" 28 of them with particularity.  Rojas states that he purchased two of the products—Nature Valley Oats and Honey Crunchy Granola Bars and Nature Valley Dark Chocolate Peanut Butter Crunchy Granola Bars—but he names no other product in the FAC. Without at least identifying the unnamed products, Rojas cannot state a claim with regard to them.

With regard to the two products he purchased, the Court finds that Rojas sufficiently states a claim.  Rojas not only alleged the who, what, when, where, and how, but he attached images of the two products to the FAC, which helps him meet the particularity requirement for pleading purposes.  *See Ries v. Hornell Brewing Co., Inc.*, 10-cv-01139-JF, 2011 WL 1299286, at *4 (N.D.

---

'risk usurping the FDA's interpretive authority'" and "the FDA is unlikely to respond in a timely manner to any referral from this Court"); *In re ConAgra Foods, Inc.*, No. 11-05379-MMM, 2013 WL 4259467, at *4-5 (C.D. Cal. Aug. 12, 2013) (stating in case concerning GMOs that "the FDA recently declined to make an administrative determination in response to an analogous referral by another district court," "the FDA declined to decide the question; it stated that it had other priorities, and that such a determination would require 'two to three years to complete'"; and that a stay is unwarranted); *Krzykwa v. Campbell Soup Co.*, No. 12-cv-62058, 2013 WL 2319330 (S.D. Fla. May 28, 2013) (stating in case concerning GMOs that "the FDA has repeatedly declined to adopt formal rule-making that would define the word 'natural' [and t]he Court agrees" that dismissal under the primary jurisdiction doctrine is unwarranted); *but see Van Atta v. Gen. Mills, Inc.*, No. 12-cv-2815-MSK-MJW (D. Colo. July 18, 2013).
[5] The First Cause of Action alleges that General Mills's "unlawful acts and practices had a capacity tendency, and/or were likely to deceive or confuse reasonable customers."  FAC ¶ 83. The Third Cause of Action alleges that General Mills's actions were "deceptively hidden."  FAC ¶ 110.  The Seventh Cause of Action seeks return of money based on General Mills's fraudulent conduct.

11

1   Cal. Apr. 4, 2011); *see also Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1077-
2   78 (E.D. Cal. 2010).
3       To the extent that Rojas's causes of action are based on General Mills's advertising or
4   website, they are dismissed.  While the FAC is rife with references to "Defendant's advertising,"
5   *see, e.g.*, FAC ¶¶ 1, 2, 5 & 8, nowhere does the FAC identify a single piece of advertising that
6   Rojas saw and relied upon aside from the products' packaging.  He does not say when he saw
7   them, where he saw them, what he saw, or why and how they were misleading.  Rojas alleges that
8   General Mills's "advertising and marketing for the Products creates the uniform, untrue net-
9   impression that the Products are comprised of only 100% Natural ingredients," yet fails to provide
10  even one example.  FAC ¶ 25.  Furthermore, Rojas makes one isolated reference to General
11  Mills's website, but does not allege that he ever visited it.  FAC ¶ 24.  Because Rojas fails to state
12  where he saw such advertisements or when he visited General Mills's website, let alone relied
13  upon and were misled by them, he does not sufficiently plead his claims under Rule 9(b).
14      Based on the foregoing, the Motion to Dismiss Rojas's UCL, CLRA, and FAL causes of
15  action is GRANTED WITH LEAVE TO AMEND, except with regard to Rojas's causes of action
16  relating to Nature Valley Oats and Honey Crunchy Granola Bars and Nature Valley Dark
17  Chocolate Peanut Butter Crunchy Granola Bars to the extent that any alleged misrepresentation is
18  based on their wrappers and containers, which is DENIED.
19  **III.    SEVENTH CAUSE OF ACTION:  MONEY HAD AND RECEIVED**
20      "A claim of money had and received is another name for a common law action for
21  restitution."  *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1041 (9th Cir. 2010).  Where a "claim
22  is simply a reformulation of plaintiff's UCL, FAL and CLRA claims," a "restitution claim is
23  superfluous."  *Ivie*, 2013 WL 685372, at *13.  The Motion to Dismiss this cause of action is
24  GRANTED WITH LEAVE TO AMEND.
25                                       **CONCLUSION**
26      General Mills's Motion to Dismiss Rojas's First, Second, Third, Fourth, and Fifth Causes
27  of Action is GRANTED WITH LEAVE TO AMEND, except with regard to Rojas's claims
28  relating to Nature Valley Oats and Honey Crunchy Granola Bars and Nature Valley Dark

Chocolate Peanut Butter Crunchy Granola Bars to the extent that any alleged misrepresentation is based on their wrappers and containers, which is DENIED. General Mills's Motion to Dismiss Rojas's Sixth Cause of Action is moot because Rojas has withdrawn it, and the Motion to Dismiss the Seventh Cause of Action is GRANTED WITH LEAVE TO AMEND.

Rojas shall file any amended complaint within 30 days of the date of this Order.

**IT IS SO ORDERED.**

Dated: October 9, 2013



WILLIAM H. ORRICK
United States District Judge