UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GABRIEL ROJAS,

    Plaintiff,

v.

GENERAL MILLS, INC.,

    Defendant.

Case No. 12-cv-05099-WHO

**ORDER ON MOTION TO DISMISS**

Re: Dkt. No. 58

Plaintiff Gabriel Rojas brings this putative California class action against defendant General Mills, Inc., asserting that the term "100% NATURAL" on General Mills's Nature Valley products (the "products") is deceptive and misleading because of the alleged presence of genetically modified organisms ("GMOs") and other synthetic ingredients. To resolve General Mills's motion to dismiss the Amended Class Action Complaint ("SAC"), I must decide: (i) whether Rojas's claim that he was deceived by the term "100% Natural" meets the "reasonable consumer" standard; and (ii) whether Rojas may assert claims for products he did not purchase. Because Rojas has plausibly alleged that General Mills's representations about its products are factual and not merely puffery, and because the allegedly deceptive and misleading representations cause the same harm with respect to the products Rojas did not purchase, I DENY the motion to dismiss.

**FACTUAL BACKGROUND**

Rojas purchased General Mills's "Nature Valley Oats and Honey Crunchy Granola Bars and Nature Valley Dark Chocolate Peanut Butter Crunchy Granola Bars" in 2012 from two Safeway grocery stores in San Francisco. SAC ¶¶ 4, 69. General Mills represented that its Nature Valley granola bars are "100% Natural" but they are not "because they contain Genetically

Modified Organisms [] and other synthetic ingredients." SAC ¶ 2.[1]

GMOs "grow from seeds that have been modified in a laboratory." SAC ¶ 35. They "are plants that grow from seeds in which DNA splicing has been used to place genes from another source into a plant." *Id*. Products containing GMOs are not 100% Natural. SAC ¶ 36. The products contain GMOs "and other synthetic ingredients, such as Maltodextrin, Soy, Yellow Corn Flour, Soy Flour and/or Soy Lecithin. Corn and soy are known to be derived from GMOs." SAC ¶ 12. Nonetheless, the "100% Natural" statement is "prominently displayed" on General Mills Products' packaging. SAC ¶ 28. Rojas identifies 29 General Mills products which claim to be 100% Natural but contain GMOs in the form of corn or soy ingredients. SAC ¶¶ 1, 27, Ex. 1.

"All of the Products' packaging uniformly and consistently states that the Products are 100% Natural," and "[a]ll Consumers who purchase the Products are exposed to the same 100% Natural claim," leading them to pay a premium for them. SAC ¶¶ 30-31. General Mills "knows" this statement is "material to the reasonable consumer," and General Mills "intends for consumers to rely upon [them] when choosing to purchase the Products." SAC ¶ 33.

The FDA does not have a definition for the term "natural," but its website "loosely defined" the term as a product that "does not contain added sugar, artificial flavors, or synthetic substances." SAC ¶ 37. The Code of Federal Regulations defines a synthetic substance as one "that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that [it] does not apply to substances created by naturally occurring biological processes." *Id*. (quoting 7 C.F.R. § 205.2). Similarly, the United States Department of Agriculture's Food Safety and Inspection Service ("FSIS") defines a "natural" product as one that does not contain any artificial or synthetic ingredient, and does not contain any ingredient that is more than "minimally processed," i.e., one that only undergone "traditional processes used to make food edible or to preserve it or to make it safe for human consumption, e.g., smoking, roasting, freezing, drying,

---

[1] Subsequent to the filing of Rojas' complaint, General Mills removed the "100% Natural" claim from the products' labeling. However during the class period the packaging of the products, including the two that Rojas purchased, stated the "100% Natural" representation. SAC ¶¶ 3-4.

and fermenting" and has not been "fundamentally alter[ed]." SAC ¶ 39 (quoting OFFICE OF POL'Y, PROG. & EMP. DEV., FOOD SAFETY & INSPEC. SERV., U.S. DEP'T OF AGRIC., FOOD STANDARDS AND LABELING POLICY BOOK 116 (2005)). "Relatively severe processes, e.g., solvent extraction, acid hydrolysis, and chemical bleaching would clearly be considered more than minimal processing," according to the FSIS. *Id.* The "scientific description of how GMOs are produced" shows that they are not "minimally processed" or "all natural." SAC ¶ 40.

"Prior to his purchase, and in purchasing the Products," Rojas "saw, read, and relied on the material 100% Natural statement displayed on the packaging for the Products," believing that to mean that "the Products do not contain, nor were they made with, any genetically modified and/or bioengineered ingredients." SAC ¶¶ 73-74. "Had [Rojas] known at the time that the Products were not, in fact, 'natural' but, instead, made with GMOs and other unnatural, synthetic ingredients, he would not have purchased the Products or paid a premium for [them]." SAC ¶ 77.

Rojas brings this putative class action on behalf of "all California residents who have purchased for personal use General Mills Nature's Valley products . . . during the period extending from October 1, 2008, through and to the date [General Mills] ceased labeling the Products 100% Natural." SAC ¶ 97. He brings the following causes of action: (1) violation of the "unlawful" prong of the Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE §§ 17200 *et seq.*; (2) violation of the "fraudulent" prong of the UCL; (3) violation of the "unfair" prong of the UCL; (4) violation of the False Advertising Law ("FAL"), CAL. BUS. & PROF. CODE §§ 17500 *et seq.*; and (5) violation of the Consumer Legal Remedies Act ("CLRA"), CAL. CIV. CODE §§ 1750 *et seq.*

**PROCEDURAL HISTORY**

On July 29, 2013, I related this case with two others in this district: *Janney v. General Mills, Inc.*, No. 12-cv-3919, and *Rojas v. General Mills, Inc.*, No. 12-cv-5280. On October 9, 2013, I granted in part General Mills's motion to dismiss. Rojas filed the Second Amended Class Action Complaint on November 8, 2013. General Mills filed its motion to dismiss on December 13, 2013, and I heard argument on March 19, 2014.

**LEGAL STANDARD**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the

3

pleadings fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The complaint "does not need detailed factual allegations," but instead only needs enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "However, conclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss." *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 834 (9th Cir. 2012).

Additionally, fraud claims are subject to a higher standard and must be pleaded with particularity. FED. R. CIV. P. 9(b). This is true of state law claims that are grounded in fraud, which must "be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103, 1106 (9th Cir. 2003) (quotation marks omitted). Such claims "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) *(citation omitted).* A plaintiff claiming fraud must also plead reliance. *Kwikset Corp. v. Super. Ct. of Orange Cnty.*, 51 Cal. 4th 310, 326-27 (2011) (UCL); *Princess Cruise Lines v. Super. Ct. of Los Angeles Cnty.*, 101 Cal. Rptr. 3d 323, 331 (Ct. App. 2009) (CLRA). Allegedly fraudulent conduct must be judged against the "reasonable consumer" standard under the UCL, CLRA, or FAL. *See Consumer Advocates v. Echostar Satellite Corp.*, 8 Cal. Rptr. 3d. 22, 29 (Ct. App. 2003).

**DISCUSSION**

**I. ROJAS HAS SUFFICIENTLY PLEADED THAT HIS CLAIMS MEET THE REASONABLE CONSUMER STANDARD**

**A. A Reasonable Consumer Could Plausibly Be Deceived By The Products' "100% Natural" Labeling**

General Mills asserts that the FAC should be dismissed in its entirety because Rojas's claims do not meet the "reasonable consumer" standard, which governs claims under California's

4

1  UCL, FAL, and CLRA. *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) ("[T]he false or
2  misleading advertising and unfair business practices claim must be evaluated from the vantage of a
3  reasonable consumer.") (citation omitted). Under the reasonable consumer standard a plaintiff
4  must "show that 'members of the public are likely to be deceived.'" *Freeman*, 68 F.3d at 289
5  (quoting *Bank of West v. Superior Court*, 833 P. 2d 545 (1992)). "Advertisements that amount to
6  'mere puffery' are not actionable because no reasonable consumer relies on puffery. Factual
7  representations, however, are actionable." *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 998
8  (N.D. Cal. 2007) (citations omitted).

Whether a business practice is deceptive is generally a question of fact not amenable to determination on a motion to dismiss. *Id*. However, in certain situations a court may assess, as a matter of law, the plausibility of alleged violations of the UCL, FAL, and CLRA. *See, e.g., Werbel ex rel. v. Pepsico, Inc.*, No. 09-cv-04456 SBA, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) (plaintiff failed to establish that a reasonable consumer would likely be deceived into believing that cereal named "Crunch Berries" derived nutritional value from fruit).

This is not the rare situation in which granting a motion to dismiss is appropriate. The front of the Nature Valley products' packaging prominently displays the term "100% Natural" that could lead a reasonable consumer to believe that the products contain only natural ingredients. These words are reinforced by the words "Natural" or "All Natural" on the products' boxes and individual wrappers. Together, these representations could easily be interpreted by consumers as a claim that *all* of the ingredients in the products are natural, which appears to be false because they allegedly contain GMOs and other synthetic ingredients. Taking these allegations as true and construing them in the light most favorable to the plaintiff, Rojas has adequately alleged that the representations on the products' labeling could plausibly deceive a reasonable consumer.

Courts have found similar claims challenging the terms "all natural" and "natural" to be sufficient basis for a cause of action under California's consumer protection laws. *See Williams v. Gerber Products Co.*, 552 F.3d 934, 939 (9th Cir. 2008) ("the statement that Fruit Juice Snacks was made with 'fruit juice and other all natural ingredients' could easily be interpreted by consumers as a claim that all the ingredients in the product were natural, which appears to be

5

false."); *Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1080 ("plaintiffs allege that they were deceived by the labeling of defendant's drink products as 'All Natural' because they did not believe that the products would contain HFCS [high fructose corn syrup] . . . . plaintiffs have stated a plausible claim that a reasonable consumer would be deceived by defendant's labeling."); *Jou v. Kimberly-Clark Corp.*, 13-03075 JSC, 2013 WL 6491158, at *5-8 (N.D. Cal. Dec. 10, 2013) (finding that the words "pure & natural," could lead a reasonable consumer to believe that that the product is free of non-natural ingredients when it actually contains polypropylene and sodium polyacrylate); *Wilson v. Frito–Lay N. Am., Inc.*, No. 12-cv-1586 SC, 2013 WL 1320468, at *12–13 (N.D. Cal. Apr. 1, 2013) ("[T]he Court finds that Plaintiffs have adequately pled that a reasonable consumer could interpret a bag of chips claiming to have been 'Made with ALL NATURAL Ingredients' to consist exclusively of natural ingredients, contrary to the reality described in the nutrition box."); *Astiana v. Ben & Jerry's Homemade, Inc.*, No. 10-cv-4387 PJH, 2011 WL 2111796, at *3-4 (N.D. Cal. May 26, 2011) (denying motion to dismiss similar claims regarding "all natural" bean dip that contains transfats); *Hitt v. Ariz. Beverage Co., LLC*, No. 08–cv–809 WQH, 2009 WL 449190, at *6-7 (S.D. Cal. Feb. 4, 2009) (denying defendant's motion to dismiss the plaintiff's UCL, FAL, and CLRA claims where the plaintiff alleged that a reasonable consumer would find the "All Natural" labeling on the defendant's drink products, which contained high fructose corn syrup, deceptive).

Accordingly, I cannot conclude as a matter of law in the context of a Rule 12(b)(6) motion that no reasonable consumer would not be deceived by the "100% Natural" and "All Natural" representations on Nature Valley products' labels.

### B. The Terms "100% Natural" and "All Natural" are Not Mere Puffery

General Mills's primary contention is that a claim based on the words "100% Natural" is not actionable because Rojas and the plaintiffs in two other related cases in this district, *Janney v. General Mills, Inc.*, No. 12-cv-3919, and *Bohac v. General Mills, Inc.*, No. 12-cv-5280, have "individualized and subjective definitions of the term 'natural'" which "depend[] on their own

individual and idiosyncratic expectations for the products." Mtn. 9.[2]

General Mills asks the Court to look beyond the four corners of the complaint and dismiss it based on allegations made by other plaintiffs in other actions. This is not permitted. General Mills is limited to facts alleged in the complaint and to matters that may be judicially noticed. It has not asked that I judicially notice the complaints in *Bohac* and *Janney*. *See* Dkt. No. 46, General Mills' Request for Judicial Notice. More significantly, it cites no support for its assumption that plaintiffs in related cases must assert the same theories of liability. To the extent General Mills relies on *Astiana v. Kashi*, 2013 WL 3943265, at *13 (S.D. Cal. Jul. 30, 2013), for the proposition that multiple plaintiffs' lack of a uniform definition of "natural" requires dismissal on a Rule 12(b)(6) motion, that argument is rejected since *Astiana* was decided on a class certification motion based on evidence produced in that case beyond the pleadings. The only allegations at issue here are those set forth by Rojas in the SAC.

General Mills cites several cases in support of its argument that "subjective statements are non-actionable under California's consumer protection laws." *See* Mtn. 9 (citing *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113, 115 (9th Cir. 2012) ("original" and "classic" non-actionable); *Edmundson v. The Procter & Gamble Co.*, 2013 WL 435434, at *1 (9th Cir. 2013) ("patented blade coating for incredible comfort" non-actionable"); *Viggiano v. Hansen Natural Corp.*, No. 12-cv-10747 MMM, 2013 WL 2005430, at *11 n.42 (C.D. Cal. May 13, 2013) ("premium all-natural flavors" non-actionable); *Elias v. Hewlett Packard Co.*, No. 12-cv-00421–LHK, 2013 WL 3187319, at *10 (N.D. Cal. Jun. 21, 2013) ("ultra-reliable" and "packed with power," nonactionable); *Fraker v. KFC Corp.*, 2006 U.S. Dist. LEXIS 79049, at *9-11 (S.D. Cal. Oct. 19, 2006) ("highest quality ingredients," "balanced diet plan," and "part of a sensible diet" non-actionable )). In each of these cases, the courts found that the challenged misrepresentations

---

[2] The plaintiff in *Bohac* asserts that the use of the term "natural" on the same 29 Nature Valley products is misleading because of the presence of GMOs as well as 11 other ingredients such as sodium bicarbonate, soy lecithin, high fructose corn syrup, and maltodextrin. *Bohac* First Amended Complaint ¶¶ 1, 31-47. The plaintiffs in *Janney* allege that the term "natural" applies to products that contain no artificial or synthetic ingredients and consist of only ingredients that are minimally processed, and challenges three specific ingredients in Nature Valley products: high fructose corn syrup, high maltose corn syrup, and maltodextrin. *Janney* Second Amended Complaint ¶¶ 2, 12-13.

7

were the type of "generalized, vague, and unspecified assertions" that constitute "mere puffery" and "upon which a reasonable consumer could not rely." *Glen Holly Entertainment, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1015 (9th Cir. 2003). *See, e.g., Viggiano*, 944 F. Supp. 2d at 894 ("The term 'premium,' . . . is mere puffery; it has no concrete, discernable meaning in the diet soda context"); *Carrea*, 475 F. App'x at 115 ("It is implausible that a reasonable consumer would interpret 'Original Sundae Cone,' 'Original Vanilla,' and 'Classic,' to imply that Drumstick is more wholesome or nutritious than competing products . . . the presence of 'original' or 'classic' ingredients alone does not plausibly imply that a product is more nutritious than other desserts. In addition, no reasonable consumer is likely to think that 'Original Vanilla' refers to a natural ingredient . . . .").

The Court may determine as a matter of law whether a statement is puffery. *Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990) ("District courts often resolve whether a statement is puffery when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and we can think of no sound reason why they should not do so."). Courts analyzing whether a statement constitutes puffery examine whether the statements are general assertions that say nothing about the specific characteristics or components of the products or whether they are specific factual assertions. "The common theme that seems to run through cases considering puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions. Advertising which merely states in general terms that one product is superior is not actionable. However, misdescriptions of specific or absolute characteristics of a product are actionable." *Cook, Perkiss & Liehe, Inc.*, 911 F.2d at 246 (citing *Smith-Victor Corp. v. Sylvania Elec. Products, Inc.*, 242 F. Supp. 302, 308-09 (N.D. Ill. 1965) (advertiser's statement that its lamps were "far brighter than any lamp ever before offered for home movies" was ruled puffery. However, when the advertiser quantified numerically the alleged superior brightness with statements such as "35,000 candle power and 10–hour life," the court found a potential Lanham Act claim)).

Here, the alleged misrepresentation "100% NATURAL" is not merely general in nature. The statement conveys the affirmative and specific factual representation that the products are

8

made *entirely* of natural ingredients. This is consistent with Rojas's claim that he read the label representations to mean that the products contain no artificial or synthetic ingredients. General Mills contends that its marketing is non-actionable puffery because "a reasonable consumer would be aware that Nature Valley granola bars are not 'found in nature' and are processed in an industrial environment." General Mills' misunderstands Rojas's allegations, which allege that consumers would likely be misled in believing that "natural" means the products have no artificial or synthetic ingredients--not that granola bars "are fruits of the earth." *Jou*, 2013 WL 6491158, at *8 (dismissing similar argument that "'reasonable consumers know' that the term 'natural' 'is not a literal description of the Products, since diapers and wipes do not spring directly from the ground or grow on trees.'"). As discussed above, several courts have found the terms "all natural" and "natural" to be potentially deceptive and actionable statements when used in products that contain GMOs and highly processed ingredients. It is plausible that a reasonable consumer would interpret these statements as specific factual claims upon which he or she could rely.

General Mills also asserts that "Natural" is mere puffery because the Federal Trade Commission ("FTC") has declined to provide "general guidance" on the use of that term. *See* 75 Fed. Reg. 63552 (2010). As the FTC explained, it did not provide guidance because it lacked "consumer perception evidence indicating how consumers understand the term 'natural.'" *Id*. In addition, the FTC noted that "natural may be used in numerous contexts and may convey different meanings depending on that context." *Id*. But far from deeming "natural" mere non-actionable puffery, the FTC statement goes on to explicitly warn marketers that the use of "natural" may be deceptive:

> Marketers that are using terms such as natural must ensure that they can substantiate whatever claims they are conveying to reasonable consumers. If reasonable consumers could interpret a natural claim as representing that a product contains no artificial ingredients, then the marketer must be able to substantiate that fact. Similarly, if, in a given context, a natural claim is perceived by reasonable consumers as a general environmental benefit claim or as a comparative claim (e.g., that the product is superior to a product with synthetic ingredients), then the marketer must be able to substantiate that claim and all attendant reasonably implied claims.

*Id*.

9

Defendant's reliance on *Pelayo v. Nestle USA, Inc.*, 2013 WL 5764644 (C.D. Cal. Oct. 25, 2013) is also unpersuasive. The plaintiff in *Pelayo* alleged that the term "all natural" on Buitoni's products was false and misleading because they contained at least two ingredients that were unnatural. The court found that the plaintiff failed to state a claim under the UCL and CLRA because she offered "several conflicting definitions" of the term "natural." Id. at *4. As the court explained:

> Plaintiff offers the Webster's Dictionary definition of "natural," meaning "produced or existing in nature" and "not artificial or manufactured." However, even Plaintiff admits that this definition clearly does not apply to the Buitoni Pastas because they are a product manufactured in mass, and the reasonable consumer is aware that Buitoni Pastas are not "springing fully-formed from Ravioli trees and Tortellini bushes."
>
> The other definitions of "natural" offered by Plaintiff are equally implausible. In another attempt to define "natural," Plaintiff alleges that none of the ingredients in a "natural" product are "artificial" as that term is defined by the Food and Drug Administration ("FDA"). *See* 21 C.F.R. § 101.22(a)(1). With respect to Buitoni Pastas, Plaintiff alleges that xanthan gum, soy lecithin, sodium citrate, maltodextrin, sodium phosphate, disodium phosphates, and ferrous sulfate (collectively, the "Challenged Ingredients") are "unnatural, artificial and/or synthetic ingredients." However, Plaintiff fails to allege that any of the Challenged Ingredients in Buitoni Pastas are "artificial" as defined by the FDA. In addition, the FDA definition of "artificial" applies only to flavor additives, and Plaintiff also fails to allege that any of the Challenged Ingredients in Buitoni Pastas are present in the product specifically as an added "flavor." Therefore, this definition of "natural" is clearly not applicable in this case.
>
> In her final failed attempt to offer a plausible definition, Plaintiff alleges that none of the ingredients in a "natural" product are "synthetic" as that term is defined by the National Organic Program ("NOP"), which regulates products labeled as "organic." However, because Buitoni Pastas are not labeled as "organic," the definition of "synthetic" under the NOP does not apply

*Id.* at *4-5 (citations omitted).

In contrast, Rojas has offered definitions of "natural" that are internally consistent and supported by applicable federal regulations and guidance. *See* SAC ¶¶ 37-39 (citing FDA and USDA regulations and guidance); Opp. 2 ("'natural' means not artificial, not synthetic, and no more than minimally processed."). Therefore, *Pelayo* is distinguishable on the facts. Furthermore, I decline to follow the analysis in *Pelayo* and find persuasive the decisions cited above where courts found the words "all natural" and "natural" to be actionable. As one judge in

10

this district who declined to follow *Pelayo* wrote, *Pelayo's* holding "is at odds with basic logic, contradicts the FTC statement on which it relies, and appears in conflict with the holdings of many other courts, including the Ninth Circuit." *Jou*, 2013 WL 6491158, at *8 (N.D. Cal. Dec. 10, 2013).

### C. General Mills May Not Rely on the Products' Ingredient List to Correct Labeling Misrepresentations

General Mills contends that the ingredients list on the product packaging clears up any possible misconception by identifying which ingredients in the products are not natural. Mtn. 12-16. Specifically, General Mills contends that "any ambiguity about what ingredients were in the products is dispelled by a review of the labels themselves." Mtn. 14.

The Ninth Circuit has already rejected the argument that "reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Williams*, 552 F.3d at 939-40 ("We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging."). Judges in this district have applied *Williams* in rejecting the argument that the "natural" representations on the front of the packaging must be viewed in combination with the back of the packaging to resolve any "ambiguity." *See Wilson*, 2013 WL 1320468, at *12–13 ("the Court finds that Plaintiffs have adequately pled that a reasonable consumer could interpret a bag of chips claiming to have been 'Made with ALL NATURAL Ingredients' to consist exclusively of natural ingredients, contrary to the reality described in the nutrition box. Even though the nutrition box could resolve any ambiguity, the Court cannot conclude . . . that no reasonable consumer would be deceived by the 'Made with ALL NATURAL Ingredients' labels.") (citations omitted); *Jou*, 2013 WL 6491158, at *8-9 ("Defendant cannot rely on disclosures on the back or side panels of the packaging to contend that any misrepresentation on the front of the packaging is excused."). As I have already explained, Rojas has alleged facts that

11

1  plausibly suggest that a reasonable consumer would be misled into believing that the terms "100%
2  NATURAL" and "all natural" mean that the products contain no non-natural ingredients. General
3  Mills cannot rely on the ingredients list to cure that alleged misrepresentation.

4  Further, the other cases on which General Mills relies to distinguish *Williams* are
5  inapposite. *See Hairston v. S. Beach Beverage Co., Inc.*, 12-cv-1429-JFW, 2012 WL 1893818, at
6  *5 (C.D. Cal. May 18, 2012), (finding *Williams* distinguishable where the phrase "all natural with
7  vitamins" was consistent with the ingredient label, because label did "not simply state that it is 'all
8  natural' without elaboration or explanation. Instead, the 'all natural' language is immediately
9  followed by the additional statement 'with vitamins' or 'with B vitamins.'"); *Gitson v. Trader
10 Joe's Co.*, 13-cv-01333-WHO, 2013 WL 5513711, at *6-7 (N.D. Cal. Oct. 4, 2013) (reasonable
11 consumer could not be misled that soy milk offered the same qualities as cow's milk because the
12 label stated LACTOSE & DAIRY FREE on its front and back); *Simpson v. Kroger Corp.*, 219
13 Cal. App. 4th 1352 (2013) (labels describing products as "butter" and "spreadable butter" not
14 misleading where top of product packaging clearly stated "WITH CANOLA OIL"); *Kane v.
15 Chobani, Inc.*, 12-cv-02425-LHK, 2013 WL 5289253, at *10 (N.D. Cal. Sept. 19, 2013) (court
16 dismissed allegation that "all natural" statement was misleading because yogurts are colored
17 artificially using fruit or vegetable juice concentrate because label discloses that defendant added
18 "fruit or vegetable juice concentrate [for color ]").

19 In each of those cases, the challenged misrepresentations are explicitly disclaimed or
20 modified by other words in the same general location on the label. The Nature Valley products'
21 labels, however, do not contain any language disclaiming or qualifying the "100% NATURAL"
22 and "all natural" misrepresentations. They do not indicate that some of the ingredients are not
23 natural. And, contrary to General Mills' assertion, I fail to see how the ingredients list necessarily
24 informs the consumer that the products include non-natural ingredients. At the pleading stage, I
25 will not conclude as a matter of law that a reasonable consumer should be expected to know that
26 ingredients such as "yellow corn flour" and "soy lecithin" are not natural. The mere presence of
27 these ingredients in the ingredients list does not clearly refute the explicit message that reasonable
28 consumers may take from the rest of the packaging: that the products are made with *only* natural

ingredients. *Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1105 (N.D. Cal. 2012) (consumer is not required to look to ingredients list to determine true contents of the product).

Accordingly, I DENY General Mills's motion to dismiss with respect to Rojas's UCL, CLRA, and FAL claims.

## II. ROJAS HAS STANDING TO PURSUE CLAIMS FOR PRODUCTS HE DID NOT PURCHASE

General Mills argues that Rojas cannot allege injury-in-fact for products he did not purchase and therefore he lacks Article III standing and statutory standing under the UCL, FAL, and CLRA. General Mills also argues that the products are not "substantially similar." I disagree.

### A. Article III Standing and Statutory Standing

"Standing under Article III of the Constitution requires that an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). A "quintessential injury-in-fact" occurs when the "plaintiffs spent money that, absent defendants' actions, they would not have spent." *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011). Additionally, if plaintiffs "state that they would not have purchased [a product] had there been proper disclosure" of relevant facts, that is sufficient to plead causation. *Id.* at 1070.

Rojas has Article III standing to bring this case. He alleges that he purchased the products that he would not have otherwise purchased had they not been mislabeled. SAC. ¶ 75. This is a "quintessential injury-in-fact." *Maya*, 658 F.3d at 1069.

In order to assert a claim under the UCL or FAL, a person must have "suffered injury in fact and ha[ve] lost money or property as a result." CAL. BUS. & PROF. CODE §§ 17204, 17535; *see also Carrea v. Dreyer's Grand Ice Cream, Inc.*, No. 10-cv-1044-JSW, 2011 WL 159380, at *2 (N.D. Cal. Jan. 10, 2011) (jointly analyzing standing under CLRA, UCL, and FAL), aff'd, 475 F. App'x 113 (9th Cir. 2012). "A plaintiff has suffered economic injury when she has either: (1) expended money due to the defendants' acts of unfair competition; (2) lost money or

property; or (3) been denied money to which he or she has a cognizable claim.*" Samet v. Procter & Gamble Co.*, No. 12-cv-1891-PSG, 2013 WL 3124647, at *3 (N.D. Cal. June 18, 2013) (citation and quotation marks omitted). The "as a result" language means that actual reliance is necessary for standing. *See Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 326-27 (2011); In re Tobacco II Cases, 46 Cal. 4th 298, 306 (2009) (stating that a plaintiff "proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements"). Actual reliance and economic injury are also required to have standing to sue under the CLRA. *Bruton v. Gerber Prods. Co.*, No. 12-cv-02412-LHK, 2013 WL 4833413, at *13 (N.D. Cal. Sept. 6, 2013).

Rojas has statutory standing. Judges in this district have routinely held that pleading that mislabeling has caused the plaintiff to purchase products he or she might not have otherwise purchased suffices for statutory standing. *Bruton*, 2014 WL 172111, at *9. Rojas alleges that he spent money purchasing products that he would not have purchased were it not for General Mills's purported mislabeling. SAC ¶ 75. Rojas claims that he read General Mills's misstatements on its product labels and relied on them in making his purchases. SAC ¶ 73. That is sufficient for standing under the CLRA, UCL, and FAL. *Carrea*, 2011 WL 159380, at *2 ("Accepting as true the allegations that Defendant charged a premium price based on alleged misrepresentations, Plaintiff satisfies the injury in fact requirement for standing to pursue claims . . . under the UCL, FAL and CLRA.").

### B. Substantially Similar Products

"There is no controlling authority on whether [p]laintiffs have standing for products they did not purchase." *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 868 (N.D. Cal. 2012). Some judges treat this question as one relevant to standing. *See, e.g., Granfield v. NVIDIA Corp.*, No. 11-cv-5403-JW, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012) ("[W]hen a plaintiff asserts claims based both on products that she purchased and products that she did not purchase, claims relating to products not purchased must be dismissed for lack of standing."); *Larsen*, 2012 WL 5458396, at *4 (holding that a plaintiff challenging the labeling of a product he did not purchase "cannot establish a legally cognizable injury under Article III"). One judge noted

that "[t]he majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012); *see also Brown v. Hain Celestial Grp.*, Inc., 913 F. Supp. 2d 881, 890 (N.D. Cal. 2012).

Other judges in this district have observed that "standing is merely a threshold inquiry that requires the class action plaintiff to demonstrate she suffered economic injury by virtue of the purchases she herself made, not for the other transactions that she seeks to represent," and questions of substantial similarity are more appropriately deferred until the class certification stage. *Trazo v. Nestle USA, Inc.*, No. 12-cv-2272 PSG, 2013 WL 4083218, at *4 (N.D. Cal. Aug. 9, 2013); *see also Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. 11-cv-2910-EMC, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012) ("any concerns . . . about material differences are better addressed at the class certification stage rather than at the 12(b)(6) stage").

Regardless of the approach, judges look to various factors showing "substantial similarity" between the purchased and unpurchased products. In *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012), Judge Gonzales Rogers allowed the plaintiff's claims about a class of products to go forward, finding that "[t]here is sufficient similarity between the products purchased . . . because the same alleged misrepresentation was on all of the [products] regardless of flavor" and all of the products contained the same challenged ingredients. In *Wilson v. Frito-Lay North America, Inc.*, Judge Conti explained that courts often consider "whether the challenged products are of the same kind, whether they are comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling." No. 12-cv-1586-SC, 2013 WL 5777920, at *4 (N.D. Cal. Oct. 24, 2013). In *Astiana v. Dreyer's Grand Ice Cream*, Judge Chen reasoned, "Plaintiffs are challenging the same kind of food products (i.e., ice cream) as well as the same labels for all of the products—i.e., 'All Natural Flavors' for the Dreyer's/Edy's products and 'All Natural Ice Cream' for the Haagen-Dazs products. That the different ice creams may ultimately have different ingredients is not dispositive as Plaintiffs are challenging the same basic mislabeling practice across different product flavors." 2012 WL 2990766, at *13.

In *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-1196, I considered the various approaches that judges in this district have taken in applying the substantial similarity test. I concluded that whether products are substantially similar depends on whether the type of claim and consumer injury between products the plaintiff did and did not purchase is substantially similar. As I explained in *Ang*:

> That determination necessarily focuses on whether the resolution of the asserted claims will be identical between the purchased and unpurchased products. For example, a claim that products are illegally mislabeled as a matter of law because the labels fail to disclose something required by a statute or regulation can be resolved without a context-specific analysis of each product's label. The label is either illegal or it is not. That the products bearing the challenged label may be different – or that the labels themselves are different in other respects – is immaterial to the determination of whether the label is in fact illegal. On the other hand, a claim that a reasonable consumer would be misled by a representation on a label may well require a context-specific analysis of the appearance of the label, the misrepresentation's placement on the label, and other information contained on the label. In those circumstances, a consumer may only be allowed to pursue those claims for products with identical labels. Finally, where the actual composition or appearance of the product is legally significant to the claim at issue, the consumer may only be allowed to pursue claims for products with identical product composition and/or appearance.

*Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-1196, slip op. at 14 (N.D. Cal. March 13, 2014).

Without deciding issues relevant to class certification, I am persuaded that Rojas has standing to bring claims challenging the 29 products for having the label "100% NATURAL." He claims that all of the products contain essentially the same representations. The harm that he alleges, *i.e.*, that he was misled by that purportedly fraudulent and incorrect representation, is the same for all 29 products. While product composition and appearance can be relevant for determining whether products are substantially similar, Rojas alleges that all of the challenged products are different flavors and varieties of granola bars and make the same "100% NATURAL" claims. SAC. ¶ 5. Though General Mills argues that the products are not "substantially similar" because ingredients and labeling vary across the 29 products, these differences do not change the fact that, as alleged, the challenged representations are the same and cause the same harm. General Mills does not argue that the differences affect the nature of or harm from the alleged misrepresentation, so any such differences are insufficient to defeat substantial similarity for

purposes of standing.

## CONCLUSION

For the reasons above, General Mills's motion to dismiss is DENIED. General Mills shall answer within 20 days.

**IT IS SO ORDERED**.

Dated: March 26, 2014



WILLIAM H. ORRICK
United States District Judge